[No. 17472-3-II.    Division Two.    November 30, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. HAROLD
D. AITKEN, *Appellant*.

*Roger A. Hunko* and *Law Office of Wecker, Hunko,* for appellant (appointed counsel for appeal).

*Russell D. Hauge, Prosecuting Attorney,* and *Warren K. Sharpe, Deputy,* for respondent.

Cox, J. — Howard Aitken, representing himself as "John C. Alexander," completed a withdrawal slip for $7,500 and presented it to the Silverdale branch of Key Bank. While Aitken waited for the money, the bank determined that there were no funds in the Alexander account. The police responded to the bank's call and arrested Aitken. Aitken was charged with and convicted of forgery and money laundering. He appeals. Because the unchallenged findings of fact support the conclusions of law on forgery, we affirm that conviction. We reverse the money laundering conviction.

In early April 1993, Aitken was in New Mexico. He obtained a state identification card in the name of John Alexander, using the birth date of the real John Alexander to get the card. The true John Alexander died in 1955 at the age of ten months. Using the identification card and the social security number of the real Alexander, Aitken obtained an Albuquerque business license and opened a checking account with a New Mexico bank.

In mid-April 1993, Aitken moved to Seattle. On April 14, he opened checking and savings accounts using the Alexander name at a Seattle branch of Key Bank. Over the course of the next few days, Aitken deposited into various branches of Key Bank three checks written on the Alexander account in the New Mexico bank. The face amounts of the checks totaled close to $13,000.

On April 21, 1993, Aitken entered the Silverdale branch of Key Bank, completed a withdrawal slip in the amount of $7,500 for the Alexander account, and presented the slip to a teller. The bank checked the Alexander account and determined that all three deposited checks drawn on

the New Mexico bank had been returned for insufficient funds. The bank alerted the police, and they arrested Aitken before he could leave the bank.

The State charged Aitken by amended information with forgery and money laundering. He waived his right to a jury trial, and a judge found him guilty as charged. Aitken challenges the convictions for forgery and money laundering.

I

FORGERY

Aitken first argues that as a matter of law the evidence is insufficient to convict him of forgery. He contends he assumed the name Alexander and thus was authorized to use that name when drawing on the account. We disagree.

■■ We first note that Aitken fails to assign error to any of the findings of fact or conclusions of law. Thus, the findings are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). Notwithstanding this failure, we must still determine whether the unchallenged findings of fact support the trial court's conclusions of law. *State v. Graffius*, 74 Wn. App. 23, 29, 871 P.2d 1115 (1994).

■■ The State charged Aitken by amended information with forgery, contrary to RCW 9A.60.020(1).[1] A threshold question is whether a withdrawal slip is a "written instrument" within the meaning of this statute. In *State v. Scoby*, 57 Wn. App. 809, 790 P.2d 226 (1990), *aff'd*, 117 Wn.2d 55, 810 P.2d 1358, 815 P.2d 1362 (1991), after noting that the forgery statute does not define the term "instrument," the court went on to hold that an "instrument is something which, if genuine, may have legal ef-

---

[1]RCW 9A.60.020 provides in part as follows:

"(1) A person is guilty of forgery if, with intent to injure or defraud:

"(a) He falsely makes, completes, or alters a written instrument or;

"(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged."

fect or be the foundation of legal liability." *Scoby*, 57 Wn. App. at 811. Because the withdrawal slip directs the bank to pay funds from the account of its customer, it has legal effect and may be the basis of legal liability. The slip therefore is a written instrument under RCW 9A.60.020.

Aitken's main argument is that his assumption of the name John Alexander, the only name on the account, could not constitute forgery. We disagree.

In *State v. Lutes*, 38 Wn.2d 475, 230 P.2d 786 (1951), the court adopted a broad definition of forgery under the former statute. The current forgery statute is worded differently. But that court's observation of the effect of assuming a name in the context of a charge of forgery is helpful. The court observed that a person could commit forgery with an assumed name if that person assumed the name "for the purpose and with the intent of perpetrating a fraud." *Lutes*, 38 Wn.2d at 480-81.

Our reading of the current version of the statute leads us to the same conclusion. One who uses an assumed name for the purpose of committing a fraud of the type involved here is guilty of forgery.

Here, the trial court specifically found that Aitken "used the name John C. Alexander only between December of 1992 and April of 1993, and only for unlawful purposes." We accept these unchallenged findings as verities on appeal. *Hill*, 123 Wn.2d at 641. They support the conclusion that Aitken is guilty of forgery.

Aitken cites authority from several other jurisdictions in support of his argument that he did not commit forgery because he had assumed the Alexander name, the name on the account. The cases Aitken cites stand for the proposition that a person does not commit forgery when signing an assumed name because he does not purport to act for another person. *See People v. Hodgins*, 270 N.W.2d 527, 529 (Mich. App. 1978); *State v. Cook*, 596 P.2d 860, 861-62 (N.M. Ct. App. 1979); *Dunlap v. State*, 332 S.W.2d 727, 728 (Tex. Crim. App. 1960); and *Smith v. State*, 379 S.W.2d 326, 328-29 (Tex. Crim. App. 1964).

In the present case, there was ample evidence that Aitken was purporting to act for another. Aitken assumed the identity of a person who had been dead for several years to commit fraud. Further, in Washington, a person commits forgery when, with the intent to defraud, she falsely makes a written instrument. RCW 9A.60.020. A person falsely makes a written instrument when she makes an instrument that purports to be authentic but is not because the ostensible maker did not authorize its making. RCW 9A.60.010(4). Here, Alexander obviously did not authorize Aitken to use his name. Therefore, the authority Aitken cites does not support his position. We hold that the trial court properly convicted Aitken of forgery.

## II

### Special and General Statutes

Aitken next argues that the State improperly charged him. He contends the State should have charged him with violation of RCW 9A.56.060(1) (unlawful issuance of checks or drafts).[2] His argument is that this special statute punishes the same conduct that the more general money laundering statute punishes. We disagree.

We first note that the amended information specifies that the forgery charge was based on Aitken's presenting a *withdrawal slip* to the bank. He fails to argue that a withdrawal slip is either a *check* or *draft* within the meaning of the unlawful issuance of a check statute. But we

---

[2]RCW 9A.56.060(1) provides:

"Any person who shall with intent to defraud, make, or draw, or utter, or deliver to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time of such drawing, or delivery, that he has not sufficient funds in, or credit with said bank or other depository, to meet said check or draft, in full upon its presentation, shall be guilty of unlawful issuance of bank check. The word 'credit' as used herein shall be construed to mean an arrangement or understanding with the bank or other depository for the payment of such check or draft, and the uttering or delivery of such a check or draft to another person without such fund or credit to meet the same shall be prima facie evidence of an intent to defraud."

need not resolve that question here. There are other grounds on which we reject Aitken's argument.

■ When a special statute punishes the same conduct as a general statute, the special statute applies, and the State may charge only the special statute. *State v. Cann*, 92 Wn.2d 193, 197, 595 P.2d 912 (1979). A special statute punishes the same conduct as a general statute only when every violation of the special statute also results in a violation of the general statute. *State v. Shriner*, 101 Wn.2d 576, 580, 681 P.2d 237 (1984). "[T]he special statute will supersede the general only '[s]o long as it is not possible to commit the special crime without also committing the general crime.'" *State v. Williams*, 62 Wn. App. 748, 753-54, 815 P.2d 825 (1991) (quoting *Shriner*, 101 Wn.2d at 583), *review denied*, 118 Wn.2d 1019 (1992).

A person violates the unlawful issuance of a check statute when, with intent to defraud, she issues checks knowing that there are not sufficient funds to cover them. RCW 9A.56.060. A person violates the money laundering statute by conducting or attempting to conduct a financial transaction involving property known to be the proceeds of certain specified unlawful activities.[3] Under the broad definitions in the money laundering statute, a person conducts a financial transaction when she issues a check. *See* RCW 9A.83.010(1), (2). Because unlawful issuance of a check is a specified unlawful activity under the money laundering statute, we must decide whether a person may unlawfully issue a check without involving, in the financial transaction, property known to be the proceeds of the unlawful check writing.

We conclude that one may unlawfully issue a check without necessarily involving in that transaction property

---

[3] RCW 9A.83.020(1)(a) provides:

"(1) A person is guilty of money laundering when that person conducts or attempts to conduct a financial transaction involving the proceeds of specified unlawful activity and:

"(a) Knows the property is proceeds of specified unlawful activity; . . . ."

known to be the proceeds of unlawful check writing. For example, if someone, with the intent to defraud, writes a check on an account with insufficient funds, he has violated the unlawful issuance of a check statute. Violation of the money laundering statute requires more. In addition to the above-mentioned mental state and acts, it would also involve "proceeds" of forgery, theft, or other unlawful activity specified in the money laundering statute. Thus, violation of the check statute is not necessarily a violation of the money laundering statute.

■ Because violation of the unlawful issuance of a check statute does not necessarily result in a violation of the money laundering statute, the unlawful issuance of a check statute and money laundering statute are not concurrent. We hold that the State had the authority to charge Aitken with money laundering.

### III

#### MONEY LAUNDERING

Finally, Aitken contends that the State failed to prove he is guilty of money laundering because there was no money in the account when he attempted the withdrawal. Specifically, he argues that all three checks he deposited had been returned by the New Mexico bank as NSF and therefore he had no "proceeds" of "specified unlawful activity" within the meaning of the money laundering statute. The State responds that the lack of money in the account is irrelevant because the statute prohibits *attempted* as well as completed financial transactions. According to the State, the money laundering offense was completed when Aitken attempted the withdrawal by presenting the slip to the teller. We disagree with the State.

Aitken's failure to challenge the trial court's findings of fact means they are therefore verities on appeal. *Hill*, 123 Wn.2d at 641. Our task therefore is to determine whether the unchallenged findings of fact support the conclusions of law with respect to money laundering. *Graffius*, 74 Wn. App. at 29.

■ Finding of fact 35 states in part:

> [Aitken] knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds.

That finding partially tracks the language of RCW 9A.83.020(1)(b), a section of the money laundering statute dealing with specific elements of the offense. But the finding omits important statutory language, namely that Aitken "act[ed] recklessly as to whether the property is proceeds of specified unlawful activity." RCW 9A.83.020(1)(b). In the absence of such an express finding, the State failed to prove an essential element of one prong of the money laundering statute on which it relied to convict Aitken. We conclude that the absence of this critical factual finding means that the conclusion of law that money laundering was established under RCW 9A.83.020(1)(b) is incorrect.

The State also relied on RCW 9A.83.020(1)(a) to convict Aitken. Findings of fact 34 and 35 relate to this prong of the money laundering statute.

Finding of fact 34 states:

> The financial transaction was pertaining to the proceeds of a specified unlawful activity as set forth in RCW 9.82.010. The money deposited at Key Bank constituted proceeds of a specified unlawful activity, to wit: forgery, and theft. The deposits at Key Bank were based upon non-existent funds at United Bank in New Mexico.

Finding of fact 35 states in part:

> The Defendant knew that the subject property, seven thousand five hundred dollars, was the proceeds of a specified unlawful activity . . . .

We first note that the above findings conflict with findings 14, 15, 16, and 18 in an important respect. The quoted findings state in substance that money in the amount of $7,500 was deposited in the Key Bank account and that

the money was the proceeds of specified unlawful activity, forgery and theft. Findings 14 to 16 and 18 establish there were *no* funds in the account when Aitken attempted the withdrawal because each of the checks he had previously deposited had already been returned as NSF. Do these inconsistent factual findings support the conclusion that Aitken is guilty of money laundering? To answer this question, we must decide whether the Legislature intended Aitken's activities to be punished by the money laundering statute. That requires us to construe the statute.

RCW 9A.83.020(1) provides:

> A person is guilty of money laundering when that person conducts or attempts to conduct a financial transaction involving the proceeds of specified unlawful activity and:

> (a) Knows the property is proceeds of specified unlawful activity[.]

The purpose of statutory construction is to give content and force to the language used by the Legislature. *State v. Wilson*, 125 Wn.2d 212, 216, 883 P.2d 320 (1994). When we interpret a statute, "the spirit and intent of the statute should prevail over the literal letter of the law." *Wichert v. Cardwell*, 117 Wn.2d 148, 151, 812 P.2d 858 (1991).

A person "attempts to conduct" a prohibited transaction under the money laundering statute "if, with intent to commit [the] crime, he does any act which is a substantial step toward the commission of [the] crime." RCW 9A.28.020(1). Intent may be inferred from all the facts and circumstances surrounding the commission of an act. *State v. Bergeron*, 105 Wn.2d 1, 19-20, 711 P.2d 1000 (1985) (although intent may not be inferred from conduct that is patently equivocal, it may be inferred from conduct that plainly indicates such intent as a matter of logical probability) (citing *State v. Lewis*, 69 Wn.2d 120, 123-24, 417 P.2d 618 (1966)). The State may use evidentiary devices, such as inferences and presumptions, to assist in meeting its burden of proof. *State v. Hanna*, 123 Wn.2d 704, 710, 871

P.2d 135, *cert. denied,* 115 S. Ct. 299 (1994). Whether conduct constitutes a "substantial step" toward the commission of a crime is a question of fact. *State v. Workman,* 90 Wn.2d 443, 449, 584 P.2d 382 (1978). Conduct is not a substantial step, however, " 'unless it is strongly corroborative of the actor's criminal purpose.' " *Workman,* 90 Wn.2d at 451 (quoting *Model Penal Code* § 5.01(2) (Proposed Official Draft, 1962)).

A "[f]inancial transaction" includes a withdrawal of funds from a bank. RCW 9A.83.010(3). "Proceeds" means "any interest in property directly or indirectly acquired through or derived from an act or omission, and any fruits of this interest, in whatever form." RCW 9A.83.010(5). "Property" means "anything of value, whether real or personal, tangible or intangible." RCW 9A.83.010(6). Forgery is a type of "[s]pecified unlawful activity" the statute contemplates. RCW 9A.83.010(7). The narrow question is whether the presentation of the withdrawal slip to the bank teller, with the requisite intent, was a substantial step toward "conduct[ing] a financial transaction involving the proceeds of specified unlawful activity." RCW 9A.83.020(1).

The money laundering statute became law in 1992. It was modeled on a similar federal statute. But the wording of our state statute differs from that of the parallel federal provisions. *See* 18 U.S.C. § 1956 (1994).

Neither the House Journal nor the Senate Journal of Washington State reveals any legislative history relevant to the question before us. But our courts have looked to other material to determine legislative intent. *Lutheran Day Care v. Snohomish County,* 119 Wn.2d 91, 829 P.2d 746 (1992), *cert. denied,* 113 S. Ct. 1044 (1993); *State v. Reding,* 119 Wn.2d 685, 690, 835 P.2d 1019 (1992) ("In the past, [the Supreme Court] has looked to legislative bill reports and analyses to discern the Legislature's intent.").

There is unpublished material tracing the Legislature's consideration of the money laundering statute. The Final Bill Report summarizes the money laundering bill and its major provisions. The report states in part:

Money laundering occurs when a person *manipulates the proceeds of some form of unlawful activity in order to conceal their criminal origin and make the proceeds appear legitimate.* The actual process of money laundering can take place in a wide variety of ways.

*1992 Final Legislative Report*, 52d Wash. State Legislature at 99 (emphasis added); Second Substitute S. Bill 5318.

The report makes clear that the object of this statute is to punish the *manipulation* of *proceeds* of forgery, theft, or some of the other unlawful activities specified in the statute in order to conceal their criminal origin. Nothing in the statute or its legislative history indicates that the type of activity in which Aitken was involved in this case falls within the scope of the money laundering statute. First, there never were any "proceeds" for him to manipulate. Second, he could not have "manipulated" nonexistent "proceeds" for any purpose, criminal or otherwise.

Aitken did not take a substantial step toward violating the money laundering statute. He attempted to steal money by forgery, and was properly convicted for that offense. We therefore hold that the conviction for money laundering cannot stand, and should be reversed.

We affirm Aitken's conviction for forgery. We reverse the conviction for money laundering and remand this matter for resentencing.

HOUGHTON, A.C.J., concurs.


MORGAN, J. (concurring) — I agree with the majority. On the issue of whether the evidence supports the conviction for money laundering, however, my reasoning may be slightly different.

A person is guilty of money laundering when he or she conducts or attempts to conduct a financial transaction involving the proceeds of specified unlawful activity, and he or she knows the proceeds are the result of specified

unlawful activity.[4] RCW 9A.83.020(1). "Specified unlawful activity" includes issuing a bank check in violation of RCW 9A.56.060(1). RCW 9A.83.010(7); RCW 9A.82.010(14)(e). RCW 9A.56.060(1) provides in part:

> Any person who shall with intent to defraud, make, or draw, or utter, or deliver to another person any check, or draft, on a bank or other depository for the payment of money, knowing at the time . . . that he has not sufficient funds in, or credit with said bank or other depository, to meet said check or draft . . . shall be guilty of unlawful issuance of bank check.

Thus, a person is guilty of money laundering if he or she conducts or attempts to conduct a financial transaction involving proceeds derived from an unlawfully issued bank check, with knowledge that the proceeds were so derived.

According to the record in this case, Aitken never obtained any funds as a result of unlawfully issuing the three checks drawn on the New Mexico bank.[5] Thus, the

---

[4]According to the statute, knowledge that the proceeds result from specified unlawful activity can sometimes be supplanted by other types of knowledge. Those other types of knowledge, however, are not pertinent here. *See* RCW 9A.83.020(1).

[5]The prosecutor questioned a bank official as follows:

Q: And how much money was actually in the account as a result of any cleared or negotiable good checks?

A: Those were all uncollected funds.

Q: Which means they were all bad checks?

A: No, uncollected funds means that . . . the checks have not cleared and had time to come back from the bank in New Mexico to tell us whether they're bad.

Q: Okay. At that time they were uncollected funds?

A: They were uncollected funds.

Q: Later they became what?

A: There were no funds on the 21st [the date on which Aitken presented the withdrawal slip].

Q: Okay.

A: They never had a chance to become collected.

State does not argue that he actually conducted a financial transaction involving the proceeds of an unlawfully issued bank check. Rather, it argues that he *attempted* to conduct a financial transaction involving such proceeds; that under the money laundering statute, his attempt is punishable in the same way as a completed crime; and thus that the evidence is sufficient to support conviction.[6]

Generally, a person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime. RCW 9A.28.020(1). More specifically, a person attempts to launder the proceeds of an unlawfully issued bank check if he or she, with intent to commit money laundering, takes a substantial step toward conducting a financial transaction that involves proceeds derived from an unlawfully issued check, with knowledge that the proceeds were so derived. It follows that the question here is whether a person *who has never obtained the proceeds of an unlawfully issued bank check* can take a substantial step toward conducting a financial transaction that involves such proceeds.

The answer is no for several reasons. The first and most basic reason is the plain wording of the money laundering and attempt statutes. A person attempts money laundering only if he or she takes a "substantial step" toward

---

Q: Were any of these checks good?

. . . .

A: They were all returned to us insufficient funds.

Q: How much money was in the account on April 21st?

A: None.

Report of Proceedings at 91-92.

[6]The State argues in its brief:

Because the crime of money laundering punishes the completed act and the attempt, it is of no consequence that the defendant did not actually obtain money. The offense is completed when the defendant attempts to [launder] money.

Br. of Resp't at 20.

completing a financial transaction *that involves the proceeds of specified unlawful activity.* A transaction cannot involve the proceeds of specified unlawful activity before such proceeds have been obtained. Thus, a person can neither attempt nor complete the crime of money laundering before he or she (or an accomplice) has obtained the proceeds of specified unlawful activity.

The second reason is legislative intent, as shown by legislative history. When the money laundering statute was before the Legislature, it was Second Substitute Senate Bill 5318. The final report on that bill states:

> Money laundering occurs when a person *manipulates the proceeds* of some form of unlawful activity in order to conceal their criminal origin and make the proceeds appear legitimate.

*1992 Final Legislative Report, supra,* at 99 (emphasis added); Second Substitute Senate Bill 5318 enacted by Laws of 1992, ch. 210, § 2. A person can manipulate proceeds only after obtaining them. Thus, the Legislature intended liability for money laundering to attach after, but not before, a defendant obtains the proceeds of specified unlawful activity.

The third reason is the relationship between the money laundering statute and the theft statutes. In general terms, the purpose of the theft statutes, including the one proscribing unlawful issuance of bank checks, is to punish a defendant for unlawfully obtaining proceeds. *See, e.g.,* RCW 9A.56.020-.080. In general terms, the purpose of the money laundering statute is to punish a defendant for manipulating such proceeds after obtaining them. The State's position overlooks this difference in purpose.

Turning back to this case, Aitken took a substantial step toward a financial transaction when he presented the withdrawal slip to the bank teller. That transaction could not have involved the proceeds of specified unlawful activity, because Aitken had never obtained such proceeds. Thus, Aitken did not take a substantial step toward

conducting a financial transaction *that involved the proceeds of specified unlawful activity*, and the evidence fails to support his conviction for money laundering.