[No. 44465-4-I.   Division One.   June 4, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. CARLOS ROMALLIS DANIELS, *Appellant*.

*Eugene E. Piculell*, for appellant.

*Norm Maleng, Prosecuting Attorney*; and *James K. Mc-Canna*, for respondent.

GROSSE, J. — Forgery occurs when a person signs a fictitious name to a charge slip without the authorization of the account holder. We affirm.

## FACTS

The customer service department of a Seattle department store received a telephone order for a $1,000 gift certificate that was to be billed to the credit card of C.O.[1] The

---

[1] For purposes of this opinion we shall refer to the account holder by his initials.

telephone caller who purported to be C.O. directed that the gift certificate would be picked up at the downtown Seattle department store by a third person who would sign the charge slip on behalf of C.O. Employees of the customer service department became suspicious and verified that C.O. had never approved such a transaction. Daniels appeared at the store, claimed the gift certificate, and signed the credit slip "John Davis."

After a bench trial, the court convicted Daniels of forgery. This appeal followed.

## DISCUSSION

Daniels denies he committed forgery for two reasons. First, he claims a forged instrument must be legally efficacious and the credit slip he signed was not. Second, he also claims he did not falsely make an instrument.

Washington's definition of forgery contains two elements: (1) the defendant must falsely make, complete, or alter a written instrument, and (2) the defendant must do so with an intent to injure or defraud.[2] Daniels does not dispute that he had fraudulent intent.

Daniels claims that he did not make or complete the instrument. The statute answers this claim. RCW 9A.60-.010(4) provides:

> To "falsely make" a written instrument means to make or draw a complete or incomplete written instrument which purports to be authentic, but which is not authentic either because the ostensible maker is fictitious or because, if real, he did not authorize the making or drawing thereof[.]

Correspondingly, RCW 9A.60.010(5) provides:

> To "falsely complete" a written instrument means to transform an incomplete written instrument into a complete one by adding or inserting matter, without the authority of anyone entitled to grant it[.]

■■ Daniels both made and completed the instrument.

---

[2] RCW 9A.60.020.

He made the charge slip by adding the signature to what was otherwise a preprinted form. Adding the signature made the form into a complete charge slip. Once he signed it, the slip purported to be authentic, but was not because the ostensible maker was fictitious. Daniels also completed the charge slip. He transformed an incomplete instrument into a complete one by adding a signature to the charge slip and he did so without a grant of authority from the account holder.

▪▪▪ Daniels' second argument, and his principal one, relates to the nature of an instrument. The forgery statute does not contain a definition of "instrument." Accordingly we look to the common law.[3] In *State v. Scoby*,[4] the court held that the common law rule of legal efficacy provides a supplementary definition of an instrument under the forgery statute.[5] The rule of legal efficacy provides that forgery requires a " 'writing which, if genuine, might apparently be of legal efficacy or the foundation of legal liability.' "[6] Daniels claims the rule of efficacy is not satisfied in his case because the signature of "John Davis" on a charge slip for C.O.'s account does not create legal liability in C.O. Daniels mistakenly confuses apparent legal efficacy with actual legal validity.

The charge slip was not legally valid against C.O. because he did not give either Daniels or "John Davis" authority to sign on his account. But the slip was legally efficacious. To determine legal efficacy we look to the document itself. If the charge slip were genuine it might have been the basis of liability for C.O. because C.O. could

---

[3] *State v. Scoby*, 117 Wn.2d 55, 57, 810 P.2d 1358, 815 P.2d 1362 (1991) (citing RCW 9A.04.060).

[4] 117 Wn.2d 55, 810 P. 2d 1358, 815 P.2d 1362 (1991).

[5] *State v. Smith*, 72 Wn. App. 237, 242, 864 P.2d 406 (1993) (citing *Scoby*, 117 Wn.2d at 57-58). Because the court in *Smith* thoroughly analyzes the common law rule of legal efficacy and why it continues to apply despite the adoption of the statutory rules on fraud, we do not repeat that analysis here.

[6] *Smith*, 72 Wn. App. at 239 (quoting 4 WILLIAM BLACKSTONE, COMMENTARIES 247 (1765); 4 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW 114 n.1 (14th ed. 1981); ROLLIN M. PERKINS, CRIMINAL LAW 340-41 (2d ed. 1969); *Dexter Horton Nat'l Bank v. United States Fid. & Guar. Co.*, 149 Wash. 343, 346, 270 P. 799 (1928)).

have granted John Davis authority to sign on his account. The fact that he did not is irrelevant to the question of legal efficacy. On its face, the charge slip was legally efficacious.

Our holding is consistent with the court's holding in *State v. Morse*.[7] In *Morse*, the court held that legal efficacy existed where the defendant signed a check as drawer with the fictitious trade name "Hillyard Motors." The court noted that had the check been signed by persons doing business under the trade name, it would have been the basis of legal liability.[8]

In contrast, in *State v. Smith*, the instrument at issue was a check. Smith stole the check from her grandmother. She filled out the amount and the "pay to the order of" field. But Smith did not sign the check. Indeed, the check showed no signature by any drawer. The court in *Smith* held that an unsigned check could not be the basis of liability under the forgery statutes because Washington's Uniform Commercial Code regarding checks expressly stated, " '[n]o person is liable on an instrument unless his signature appears thereon.' "[9]

*State v. Aitken* is also instructive.[10] There, using false identification, the defendant set up accounts at both a Seattle and an Albuquerque, New Mexico bank. He deposited checks written on the New Mexico bank into the Seattle account. He then completed and presented a withdrawal slip on the Seattle account. The court stated that the threshold question was whether the withdrawal slip was an instrument within the meaning of the statute, and stated:

In *State v. Scoby*, 57 Wn. App. 809, 790 P.2d 226 (1990), *aff'd,*

---

[7] *State v. Morse*, 38 Wn.2d 927, 234 P.2d 478 (1951).

[8] *Morse*, 38 Wn.2d at 930.

[9] *Smith*, 72 Wn. App. 237, 243, 864 P.2d 406 (1993) (alteration in original) (quoting former RCW 62A.3-401(1) (1992)). *See also State v. Taes*, 5 Wn.2d 51, 53, 104 P.2d 751 (1940) (holding that a purported bank check that lacked the name of any bank could not have efficacy if genuine).

[10] *State v. Aitken*, 79 Wn. App. 890, 905 P.2d 1235 (1995).

117 Wn.2d 55, 810 P.2d 1358, 815 P.2d 1362 (1991), after noting that the forgery statute does not define the term "instrument," the court went on to hold that an "instrument is something which, if genuine, may have legal effect or be the foundation of legal liability." *Scoby*, 57 Wn. App. at 811. Because the withdrawal slip directs the bank to pay funds from the account of its customer, it has legal effect and may be the basis of legal liability. The slip therefore is a written instrument under RCW 9A.60.020.[11]

The defendant also contended that his use of a fictitious name to both set up the account and to attempt to draw on it could not constitute forgery. This court disagreed, holding that a person can commit forgery with an assumed name if the name was assumed for the purpose of committing fraud.[12]

Daniels has cited no statute or other authority that states a charge slip cannot be the basis of legal liability when signed by a person other than the account holder. The frequency with which the practice occurs suggests no such statute exists.

The charge slip would have been legally efficacious if genuine. Daniels falsely made and falsely completed the charge slip when he signed the fictitious name "John Davis" without authority to do so. We affirm.

WEBSTER and APPELWICK, JJ., concur.

---

[11] *Aitken*, 79 Wn. App. at 893-94.

