**UNITED STATES, Appellee,**

**v.**

**Specialist Edward H. SHERMAN, United States Army, Appellant.**

**ARMY 9701882.**

U.S. Army Court of Criminal Appeals.

14 April 2000.

For Appellant: Colonel John T. Phelps II, JA; Colonel Adele H. Odegard, JA; Major Leslie A. Nepper, JA; Captain David S. Hurt, JA (on brief).

For Appellee: Major Patricia A. Ham, JA; Captain Kelly D. Haywood, JA (on brief).

Before TOOMEY, Senior Judge, CARTER, and NOVAK, Appellate Military Judges.

## OPINION OF THE COURT

### NOVAK, Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of conspiracy to commit larceny and forgery,[1] larceny, and four specifications of forgery, in violation of Articles 81, 121, and 123, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, and 923 [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to Private E1. The case is before the court for automatic review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

The appellant asserts that the evidence is legally and factually insufficient to support a finding of guilty to the four forgery specifications because a signature on a savings account signature card does not operate to the legal liability of another.[2] *See Manual for Courts–Martial, United States* (1995 ed.), Part IV, paras. 48b(1)b and c(4) [hereinafter MCM, 1995]. We disagree, and find the specifications legally and factually sufficient.

### Facts

The appellant and his co-conspirator, Private (PVT) Carr, worked at the post finance office. They embezzled over $53,000.00 by ordering travel advances for departing soldiers who had not requested them. The thefts were accomplished when they directed, via computer, that the payments be delivered to several bank accounts, some of which were savings accounts fraudulently opened specifically to receive the funds. The government proved through the testimony of a bank branch manager and PVT Carr, and we find, that PVT Carr opened four savings accounts at four different banks, by falsifying the signatures of three soldiers, as summarized below:

1) At the Community Bank, PVT Carr signed the name "Shawn MacLachlan" to a card which reveals that the sum of $5.00 was deposited to open the account. The terms on the card specify that the account holder had "received the Rules and Regulations relating to th[at] account and . . . agree[d] to be bound by th[ose] Rules and Regulations";

2) At the Marine Midland Bank, PVT Carr signed the name "Terri L. Johnston" to a card which reveals that the sum of $20.00 was deposited to open the account. The terms on the card require the bank to "handle [the] account according to the 'Rules For Deposit Accounts' and the 'Terms and Charges Disclosure' . . . ." Further, the card states that the account holder "agree[d] that th[e] card and the 'Rules' and 'Terms and Charges Disclosure' are a binding contract between [the account holder] and [the bank]";

3) At OnBank & Trust, PVT Carr signed the name "Craig L. Hayden" to a card which contains no information about any

---

1. The appellant was charged with, and found guilty of, conspiracy to commit larceny and forgery. Because the staff judge advocate's recommendation only listed the conspiracy as being to larceny, and the convening authority approved those findings, the promulgating order correctly lists only the larceny as the object of the conspiracy.

2. The appellant does not contest the legal or factual sufficiency of the findings of guilty of larceny and conspiracy to commit larceny.

initial deposit. The card contains an account number, the account holder's social security number and date of birth, and specifies that the account holder "agree[d] to be bound by the rules and regulations of th[e] Bank pertaining to bank deposits and collections." The account statement for the month the account was opened shows a deposit of $20.00 three days after the account was opened;

4) At the Chase Manhattan Bank, PVT Carr signed the name "Terri L. Johnston" to a signature card which was subsequently lost. The branch manager identified PVT Carr as the individual who opened the account. The "Chase Savings Statement" for the month the account was opened shows a deposit of $20.00 on the day the account was opened.[3]

At the conclusion of the government case on the merits, the trial defense counsel made a motion for a finding of not guilty (Rule for Courts–Martial [hereinafter R.C.M.] 917) to the forgery specifications for lack of proof of legal liability.[4] The government argued that the reference on the signature cards to banking rules and regulations created a binding contract on the bank and that the back-up withholding section on the cards imposed an obligation on the bank to report to the Internal Revenue Service any interest paid. The military judge denied the motion. The trial counsel reminded the members before they began their deliberations that the government's charging allowed proof of legal liability to the detriment of either the named soldier or the bank.[5] Trial counsel argued that the language of the card formed a binding contract, imposing duties on the bank to safeguard the money, to release it to the account holder, and to report to tax authorities any interest earned. He also claimed that the account holders would be legally harmed when the banks reported the interest.

The trial defense counsel renewed in his R.C.M. 1105 post-trial submissions on behalf of the appellant his argument that the government failed to prove the legal liability element of the forgery specifications.

### Law

When this court reviews a case for legal sufficiency, the scope of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Izquierdo,* 51 M.J. 421 (1999). On the other hand, when testing for factual sufficiency, this court must, after weighing the evidence and making allowances for not having seen the witnesses in person, be convinced that an accused is guilty beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

In general, "[a] writing or instrument in order to constitute a forgery must possess some apparent legal efficacy. It is sufficient, however, to constitute a forgery if there is a reasonable possibility that the false writing or instrument may operate to cause injury, although no actual injury therefrom is necessary." 36 *Am.Jur.2d Forgery* § 24 (1999); (footnotes omitted). "The crime of forgery has been extended by statute, and to a considerable extent by judicial construction, until it covers nearly every class of instruments

---

**3.** The signature cards signed by PVT Carr at Community Bank, Marine Midland Bank, and OnBank & Trust each contain in their preprinted terms the account holder's assurance to the bank that he is not subject to back-up withholding by the Internal Revenue Service.

**4.** The elements of forgery require proof in this case that (a) the appellant falsely made or altered a certain signature; (b) the signature was of a nature which would, if genuine, apparently impose a legal liability on another or change another's legal rights or liabilities to that person's prejudice; and (c) the false making was with intent to defraud. MCM, 1995, Part IV, para.

48b(1). The appellant's counsel conceded that PVT Carr falsely made the signatures with intent to defraud, i.e., to deposit embezzled travel advances. The defense theory of the case was that the appellant was unaware of the entire scheme, but regardless of his lack of involvement, the forgery specifications were legally and factually insufficient.

**5.** The forgery specifications charged that the writings would "apparently operate to the legal harm of another." The appellant did not object to the form of the specifications prior to trial or ask for a bill or particulars. R.C.M. 906(b)(6).

known to the law as affecting private or public rights." *Id.* at § 27 (footnote omitted).

■ Article 123(1), UCMJ, establishes a forgery when an accused, with intent to defraud, "falsely makes or alters any signature to, or any part of, any writing which would, if genuine, apparently impose a legal liability on another or change his legal right or liability to his prejudice." Military law thus also requires the element of legal efficacy as a predicate to a conviction for the crime of forgery. *See generally United States v. Thomas,* 25 M.J. 396 (C.M.A.1988) (thorough history of the present-day elements of forgery). In interpreting the requirement for legal efficacy, false applications for checking accounts have been held to be forgeries affecting legal liabilities because they "create[ ] a contract, conferring rights and imposing obligations on both the bank and the depositor," such as the obligation "to pay checks drawn on the account [and to] perform certain bookkeeping functions...." *United States v. Ivey,* 32 M.J. 590, 591 (A.C.M.R. 1991), *aff'd,* 35 M.J. 62 (C.M.A.1992); *see also United States v. White,* 35 M.J. 154 (C.M.A.1992) (legal obligations outlined on signature card and checking account agreement forms, combined with bank representatives' testimony about extension of credit and furnishing of teller cards to access that credit, established legal efficacy). Other fraudulent writings which create contractual obligations and thus support a forgery conviction include installment sales contracts, motor vehicle installment contracts, and loan applications. *See United States v. Hopwood,* 30 M.J. 146, 147 n. 2 (C.M.A.1990); *United States v. Victorian,* 31 M.J. 830 (N.M.C.M.R. 1990); *United States v. Nichols,* 27 M.J. 909 (A.F.C.M.R.1989).

Our research has revealed no military or civilian case holding that a false signature on a savings account signature card constitutes or does not constitute a forgery. In analyzing the nature of the inception of a banking relationship, however, we learn that "[b]y opening an account and delivering funds constituting the deposit, one becomes a 'depositor' and a *contractual* relationship is created." 10 *Am.Jur.2d Banks And Financial Institutions* § 719 (1999); (footnotes omitted) (emphasis added). "The deposit agreement, if any, signature card, and checks drawn against account (sic) are the contract documents between bank and its customer, and the rules and regulations adopted by a bank also become part of the contract." *Id.* at § 722 (footnotes omitted). Likewise, "[t]he signature card of the depositor stating that the account is subject to the bank's regulations and charges is a contract and binds the depositor." *Id.* at § 725 (footnote omitted).

### Discussion

At the outset, we note that any analysis of the legal and factual sufficiency of the forgeries must recognize the differences in the evidence the government offered to prove each specification. The form and content of the three admitted signature cards vary, and the fourth signature card is absent. We will thus consider the evidence as falling in three categories.

■ First and easiest are the signature cards for accounts at the Marine Midland and Community Banks. As described above, these cards show on their face the initial deposit PVT Carr made to open the savings account. We are amply satisfied that the signature on these documents imposes on those banks a liability to safeguard and pay interest on the deposited amount; not to withhold any taxes from such interest; to report such interest to the Internal Revenue Service and the account holder; not to allow withdrawal of the deposited amount except upon the depositor's signature; and to maintain records and send regular account statements for those accounts. The signatures also impose on the account holder a liability to report on annual income tax statements any interest earned. Accordingly, we find the requisite legal liability to substantiate a forgery. MCM, 1995, paras. 48b(1) and c(4).

■ More problematic is the signature card for the savings account at OnBank & Trust. This card shows no initial deposit as consideration for the contract formed by the opening of the account. Using our "common sense [and] knowledge of ... the ways of the

world," [6] however, we recognize that the opening of any bank account imposes certain legal liabilities on the bank: in addition to the bookkeeping, reporting, and security functions listed above, the bank must coordinate with federal banking officials to maintain adequate insurance for any amounts that might be deposited in the account. While the bank no doubt has numerous additional specific duties under banking regulations, none were proven on this record. Nevertheless, we conclude that the general bookkeeping, security, and insurance functions inherent in agreeing to maintain a bank account impose sufficient legal liability on a bank to warrant a forgery conviction when a savings account is opened through means of a false and fraudulent signature on a signature card. MCM, 1995, paras. 48b(1) and c(4).

■ Less obvious is the proof of the forgery involving the Chase Manhattan account, the existence of which was proven through the account statement and the testimony of PVT Carr and the bank manager. Unfortunately, even though the government called the bank manager to the stand, they did not avail themselves of the opportunity to have the bank manager present a sample signature card to show what the co-conspirator signed. Likewise, trial counsel squandered a valuable opportunity to have the manager educate the panel on the general legal obligations of a bank and a depositor once an account is opened. Nevertheless, viewing the evidence in the light most favorable to the prosecution, we are satisfied that the signature card created a binding contract that required Chase Manhattan to perform the banking duties described for OnBank & Trust, above. We are also convinced beyond a reasonable doubt that the signature was false and fraudulent and had legal efficacy. MCM, 1995, paras. 48b(1) and c(4).

Assuming arguendo that our analysis of the legal efficacy of the four falsified signature cards is incorrect, the appellant has not been prejudiced as to sentence. The military judge ruled that even had she found the appellant not guilty of the forgeries pursuant to his motion, the evidence of record on the government's case on the merits would have been admissible to show how the appellant's criminal enterprise was effected. The members would thus have had before them the same evidence of the false signatures and the multiple fraudulently opened savings accounts. Although a finding of not guilty of the forgery specifications would have reduced the maximum potential punishment to confinement from forty to twenty years, we are convinced, applying the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), that the court-martial would have adjudged confinement at least of the magnitude of three years.

We have considered the appellant's request pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), that we review the allegations of legal error and the request for leniency made in his post-trial R.C.M. 1105 matters. We find the allegations of legal error, one of which is the assigned error raised above, to be without merit, but the request for leniency warrants comment.

The appellant complained that the eleven-month delay in providing him an authenticated record of trial delayed by three months his first possible consideration by a parole board, from September 1998 to at least December 1998. The addendum to the staff judge advocate's recommendation provided no explanation for the delay and no description of what efforts, if any, were undertaken to minimize the delay. While we do not find specific prejudice in this case, where the March 1999 parole board did not see fit to release the appellant before May 1999, *see United States v. Jenkins*, 38 M.J. 287 (C.M.A.1993), we do not condone the lengthy post-trial processing, which extended for just over one full year from adjournment to action. Prior to 1984, staff judge advocates routinely completed records and laborious post-trial reviews under the previous, stringent ninety-day rules. MCM, 1969, para. 85b; *Dunlap v. Convening Authority*, 23

6. Dep't of Army, Pam. 27–9, Military Judges' Benchbook, page 53 (30 Sept. 1996).

U.S.C.M.A. 135, 48 C.M.R. 751, 1974 WL 13908 (1974), *overruled by United States v. Banks,* 7 M.J. 92 (C.M.A.1979). We fail to comprehend how a delay four times the previous time limits could be construed as so routine that no explanation is provided to the convening authority.

The findings of guilty and the sentence are affirmed.

Senior Judge TOOMEY and Judge CARTER concur.