# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51946-1-II |
| Respondent. | |
| vs. | PART PUBLISHED OPINION |
| ANTHONY JERROD SMITH, | |
| Appellant. | |

MAXA, P.J. – Anthony Smith appeals his convictions of one count of first degree theft, two counts of forgery, and one count of money laundering. Smith's convictions arose from his involvement in certain transactions with his half-brothers, Derek James and Adrian Broussard. The transactions involved creating auto dealer businesses and using invalid social security numbers to obtain loans from credit unions to purchase cars from the auto dealers. The men then would deposit the loan amount into a bank account for one of the auto dealer businesses but would not actually complete the car sale.

Smith created an auto dealer business and opened a business banking account for that business using a social security number belonging to another person. James obtained a loan from a credit union to purchase a car from Smith's business. The credit union issued a check payable to Smith's business, which was deposited into the business's bank account. Two days later, Smith opened another business banking account using the same social security number and transferred the funds from the credit union loan in the first account to that new account. Shortly

afterward, Smith withdrew nearly all the funds from the new account. There was no indication that James ever purchased the car for which he obtained the loan.

In the published portion of this opinion, we hold that (1) the evidence was sufficient to convict Smith of the two counts of forgery because there was evidence that his two bank account applications had legal efficacy and were falsely completed, and (2) the trial court did not err in refusing to give an instruction defining "instrument" to include a legal efficacy requirement because the legal efficacy of the bank account applications was a question of law for the trial court. In the unpublished portion, we address and reject Smith's other arguments but conclude that the criminal filing fee must be stricken. Accordingly, we affirm Smith's convictions, but we remand for the trial court to strike the criminal filing fee from the judgment and sentence.

FACTS

*Business Formation, Bank Account Applications, and Loan Transactions*

Smith, James, and Broussard each registered businesses with the Secretary of State. In April 2016, James registered a business named "Fast Lane Autos." On the same day, Broussard registered a business named "Brown Bear Auto." In June, Smith registered a business named "A.J. Motors."

On June 23, Smith opened a Wells Fargo business banking account for A.J. Motors using a social security number belonging to a child from Indiana. Around the same time, James and Broussard also opened bank accounts for their businesses.

On June 24, James obtained a $14,840 loan from Inspirus Credit Union to purchase a car from Smith's business, A.J. Motors. James applied for the loan using the social security number of a child in Ohio. On June 28, the credit union issued a check for $14,840 payable to A.J.

Motors. On June 29, the check was deposited into A.J. Motors' bank account. This deposit was the first and only deposit of funds into the account.

On July 1, Smith returned to the Wells Fargo branch where he had opened the A.J. Motors account and asked a banker to stop payment on an unauthorized deposit to the account for $14,840. The banker was unable to do so because of the status of the deposit. The banker offered to initiate a procedure involved opening a new account, transferring all the funds from the old account to the new account, and closing the old account. Smith opened another Wells Fargo business banking account for A.J. Motors, again using the social security number of the Indiana child. With Smith's authorization, the bank transferred all of the $14,840 in the old account to the new account.

On July 11, surveillance footage showed Smith making two withdrawals from the new account, the first in the amount of $5,000 and the second in the amount of $9,800. Without the prior transfer from the initial account, there would not have been sufficient funds in the new account to make these withdrawals. There was no indication that James ever purchased the car for which he obtained the loan.

Tacoma Police investigated the transactions involving Smith, James, and Broussard. The State later charged Smith with two counts of forgery, one count of first degree theft, and one count of money laundering.

*Motion to Dismiss Forgery Charges*

At trial, after the State rested, Smith brought a motion to dismiss the forgery charges. He argued that the forgery charges should be dismissed because the bank account applications lacked legal efficacy, and because the State had not shown that he falsely completed the applications. The trial court denied the motion to dismiss the forgery counts. The court stated,

3

> [T]he evidence satisfies the Court that if this application for an account has legal efficacy as the law defines it, that there is substantial evidence from which a juror could conclude that forgery was committed beyond a reasonable doubt; that is to say that Mr. Smith acted with intent to defraud knowing that the document that he was completing, that he was uttering, was false.

7 Report of Proceedings (RP at 994-95.

*Jury Instructions*

The trial court gave a jury instruction that stated, "A person commits the crime of Forgery when, with intent to injure or defraud, he or she falsely completes a written instrument or possesses, offers, or puts off as true, a written instrument which he or she knows to be forged." Clerk's Papers (CP) at 299. The court also gave the following instruction: " 'Written instrument' means any paper, document or other instrument containing written or printed matter or its equivalent." CP at 301.

Smith proposed an instruction that stated, "An instrument is something, which, if genuine, may have legal effect or be the foundation of legal liability." CP at 224. He argued that the definition of "instrument" as proposed in his instruction reflected the common law definition. The trial court declined to give this instruction.

*Conviction*

The jury found Smith guilty of two counts of forgery, one count of first degree theft, and one count of money laundering. Smith appeals his convictions.

ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE

Smith argues that the State failed to present sufficient evidence on the two forgery counts because it failed to establish that (1) the bank account applications Smith completed for A.J. Motors had legal efficacy and (2) the applications were falsely completed. We disagree.

4

1.    Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). In a sufficiency of the evidence claim, the defendant admits the truth of the evidence and the court views the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the State. *Id*. at 265-66. Credibility determinations are made by the trier of fact and are not subject to review. *Id*. at 266. Circumstantial and direct evidence are equally reliable. *Id*.

2.    Legal Principles

Under RCW 9A.60.020(1),

A person is guilty of forgery if, with intent to injure or defraud: (a) He or she falsely makes, completes, or alters a written instrument or; (b) He or she possesses, utters, offers, disposes of, or puts off as true a written instrument which he or she knows to be forged.

Under this statute, the existence of a written instrument is an element of forgery. *State v. Ring*, 191 Wn. App. 787, 791, 364 P.3d 853 (2015).

RCW 9A.60.010(7) defines "written instrument" as,

(a) Any paper, document, or other instrument containing written or printed matter or its equivalent; or (b) any access device, token, stamp, seal, badge, trademark, or other evidence or symbol of value, right, privilege, or identification.

Although this definition refers to an "other instrument," neither RCW 9A.60.020(1) nor RCW 9A.60.010(7) defines "instrument." Therefore, the common law provides the definition. *Ring*, 191 Wn. App. at 792; *see* RCW 9A.04.060 ("The provisions of the common law relating to the commission of crime and the punishment thereof . . . shall supplement all penal statutes of this state").

"Under the common law, an instrument is something that, if genuine, would have legal effect or be the foundation of legal liability." *Ring*, 191 Wn. App. at 792. Therefore, a "written instrument" as used in RCW 9A.60.020 is defined as a writing that has legal efficacy. *Id.* Under this definition, "a writing can support a forgery charge only if the writing would have legal efficacy if genuine." *Id.*

### 3. Legal Efficacy of Bank Account Applications

Smith argues that the evidence does not establish that the bank account applications at issue constituted "written instruments" under the forgery statute because there was no evidence that the applications had any legal effect or that they could be foundations for legal liability. We disagree.

The legal efficacy rule was part of Washington forgery law under former chapter 9.44 RCW (1909) from 1909 through 1975, when the current forgery statute was enacted. *Ring*, 191 Wn. App. at 792. The legislature intended to continue the legal efficacy rule under the new forgery statute. *Id.* The former forgery statute listed categories of documents that satisfied the legal efficacy requirement, including

> "any writing or instrument by which any claim, privilege, right, obligation or authority, or any right or title to property, real or personal, is or purports to be, or upon the happening of some future event may be, evidenced, created, acknowledged, transferred, increased, diminished, encumbered, defeated, discharged or affected."

*State v. Bradshaw*, 3 Wn. App. 2d 187, 190 n.1, 414 P.3d 1148 (2018) (quoting former RCW 9.44.020 (1909)). Legislation revising the forgery statute in 1975 removed the particularized list of categories of items that can be forged. *Bradshaw*, 3 Wn. App. 2d at 190. However, the "use of the expression 'written instrument' was meant to encompass the full range of items in the previous statute." *State v. Scoby*, 117 Wn.2d 55, 59-60, 810 P.2d 1358 (1991).

No Washington case previously has considered the legal efficacy of a bank account application under the forgery statute. As authority, the State points to several military court cases holding that checking account applications had legal efficacy under 10 U.S.C. § 905. *See U.S. v. White*, 35 M.J. 154, 156 (C.M.A. 1992); *U.S. v. Ivey*, 32 M.J. 590, 591 (A.C.M.R. 1991); *U.S. v. Sherman*, 52 M.J. 856, 859 (C.M.A. 2000).

In general, bank account applications initiate a contractual relationship between the bank and the depositor that, once accepted by the bank, create rights in and impose obligations on both parties. Depositors give money to the bank in exchange for the bank's services. The bank services the depositor's account in exchange for fees and the use of the depositor's funds.

Here, by signing the applications, Smith agreed that his relationship with the bank would be bound by certain agreements. The trial court admitted the account applications themselves as evidence. The applications both contained a "Certificate of Authority" which read in part

> Each person who signs the "Certified/Agreed To" section of this Application certifies that . . . [t]he Customer's use of any [Bank] deposit account, product or service *will confirm the Customer's receipt of, and agreement to be bound by, the Bank's applicable fee and information schedule and account agreement* that includes the Arbitration Agreement under which any dispute between the Customer and the Bank relating to the Customer's use of any Bank deposit account, product or service will be decided.

Ex. 65 at 5, Ex. 78 at 4 (emphasis added). The "Certificate of Authority" also provided that anyone who signed the application certified that he or she was authorized to act with respect to the account and any agreements with Wells Fargo, to make payments from the account, and to give instructions to Wells Fargo regarding the transaction of any business relating to the account. Therefore, the bank account applications at issue here provided the foundation of legal liability and had legal efficacy under the forgery statute.

7

Accordingly, we hold that sufficient evidence supports the conclusion that Smith's bank account applications had legal efficacy.

4.    Falsely Completed Bank Account Applications

Smith argues that even if the bank account applications had legal efficacy, the State failed to establish that they were falsely completed. We disagree.

"To 'falsely complete' a written instrument means to transform an incomplete written instrument into a complete one by adding or inserting matter, without the authority of anyone entitled to grant it." RCW 9A.60.010(4). Forgery does not include making false entries in an otherwise genuine document but instead involves "the manufacture of a false or spurious document made to appear to be other than what it actually is." *State v. Esquivel*, 71 Wn. App. 868, 870-71, 863 P.2d 113 (1993).

Smith analogizes his case to *State v. Mark*, 94 Wn.2d 520, 618 P.2d 73 (1980). In *Mark*, a pharmacist completed Medicaid claim forms by writing a physician's name in a space marked "physician's signature" in cases where he had received prescriptions from physicians over the phone or where the prescriptions were renewable. *Id.* at 521-22. The Supreme Court granted review to determine "whether the writing in of a physician's name on the claim form was an act of forgery if no prescription had in fact been received by the defendant." *Id.* at 523.

The court concluded that the filling in of blank prescription billing forms without the doctor's authorization did not constitute forgery. *Id.*

> [T]he physician's name, when filled in by the defendant, did not purport to be the signature of the physician; rather it was a representation that the physician had prescribed the drugs for which claim was made. . . . [T]here was no showing that the defendant forged any prescriptions. His offense was in representing to the Department the number and kind of prescriptions which he had received. A misrepresentation of fact, *so long as it does not purport to be the act of someone other than the maker*, does not constitute forgery.

*Id.* (emphasis added).

Smith argues that as in *Mark*, the account applications at issue here are genuine documents that he as the owner of A.J. Motors had the authority to complete; they simply contained a piece of false information. He contends that merely providing false information in this context cannot be the basis for a forgery charge.

But *Mark* is distinguishable because Smith did not simply provide false information when completing the applications. He also provided the social security number of another person, a child in Indiana. The court in *Mark* specified that "[a] misrepresentation of fact, *so long as it does not purport to be the act of someone other than the maker*, does not constitute forgery." 94 Wn.2d at 523. And RCW 9A.60.010(4) states that to falsely complete a written instrument means to complete it "by adding or inserting matter, *without the authority of anyone entitled to grant it*." (Emphasis added). A social security number is a form of identification, and Smith's use of the Indiana child's social security number misrepresented that someone with that social security number was opening a bank account. Smith also did not have the authority to use the social security number of the child in Indiana.[1]

---

[1] Courts in several other jurisdictions have held that the use of another's social security number supports a forgery conviction. *McCleaf v. Carroll*, 416 F. Supp. 2d 283, 293 (D. Del. 2006) (defense counsel was not ineffective for failing to challenge evidence supporting forgery conviction where defendant signed arrest card with a false social security number, birthdate, name, and scar/tattoo information); *State v. DeGenero*, 2017-Ohio-624, 85 N.E.3d 170, 174-75 (2017) (sufficient evidence supported defendant's forgery conviction where defendant made purchases with a credit card he had obtained by providing his deceased grandmother's name and social security number); *Bocanegra v. State*, 969 N.E.2d 1026, 1029 (Ind. Ct. App. 2012) (sufficient evidence supported defendant's intent to defraud in forgery prosecution where defendant did not have the documents to work legally in the United States and used another person's name and social security number to obtain employment); *Jackson v. State*, 277 Ga. App. 801, 803-04, 627 S.E.2d 853 (2006) (trial court did not err in denying defendant's motion for directed verdict on forgery charge where defendant cashed a check made out to the victim after endorsing it with victim's name and social security number).

Accordingly, we hold that sufficient evidence supports the conclusion that Smith falsely completed the bank account applications.

B.    PROPOSED JURY INSTRUCTION REGARDING LEGAL EFFICACY

Smith argues that the trial court erred by declining to give his proposed jury instruction on the definition of "instrument," which included the legal efficacy requirement. We disagree because the legal efficacy of the bank account applications was a question of law for the trial court. Therefore, Smith was not entitled to a jury instruction regarding that issue.

1.    No Constitutional Requirement

Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminal defendant is entitled to a jury determination of every element of the charged offense. *Apprendi v. New Jersey*, 530 U.S. 466, 476-77, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). As a result, the trial court must instruct the jury on all elements of the offense. *State v. Scott*, 110 Wn.2d 682, 689, 757 P.2d 492 (1988). Smith argues that failing to give an instruction incorporating the legal efficacy requirement violates this constitutional requirement.

However, legal efficacy is not an element of forgery. *Ring*, 191 Wn. App. at 793. The existence of a "written instrument" is the essential element. *Id.* Legal efficacy is merely a definition of that element. *See id.* at 793-94. The constitution does not require that the trial court further define an element of an offense. *Scott*, 110 Wn.2d at 689; *see also State v. O'Donnell*, 142 Wn. App. 314, 325, 174 P.3d 1205 (2007). "[F]ailure to give a definitional instruction is not failure to instruct on an essential element." *State v. Brown*, 132 Wn.2d 529, 612, 940 P.2d 546

(1997). Therefore, there is no constitutional requirement that the jury rather than the trial court decide the legal efficacy issue.[2]

But that conclusion does not resolve the issue here. If legal efficacy must be decided by the jury rather than the court, the trial court still may be required to instruct on legal efficacy under nonconstitutional principles.

2. *Miller* – Trial Court's Gate-Keeping Function

In *State v. Miller*, the Supreme Court addressed whether the trial court or the jury should resolve a requirement of a conviction that was not an element of the offense. 156 Wn.2d 23, 24, 31, 123 P.3d 827 (2005). In that case, the court held that the validity of the no-contact order is not an element or an implied element of the crime of violating such an order. *Id.* at 27-31. The court stated, "The legislature likely did not include validity as an element of the crime because issues concerning the validity of an order normally turn on questions of law. Questions of law are for the court, not the jury, to resolve." *Id.* at 31.

The court further stated that "issues relating to the validity of a court order . . . are uniquely within the province of the court." *Id.* The court concluded, "The court, as part of its gate-keeping function, should determine as a threshold matter whether the order alleged to be violated is applicable and will support the crime charged. Orders that are not applicable to the crime should not be admitted." *Id.*

In *State v. Case*, the court adopted the same rule with regard to a statute elevating violation of a no-contact order to a felony when an offender has at least two prior convictions for

---

[2] Smith does not argue that legal efficacy is an implied, nonstatutory element of forgery. An implied element is one that either "fit[s] within longstanding principles of law or [is] derived from our reasoned judgment as to legislative intent." *State v. Miller*, 156 Wn.2d 23, 28, 123 P.3d 827 (2005). We do not address this issue.

violating certain qualifying orders. 187 Wn.2d 85, 87, 384 P.3d 1140 (2016). The court stated, "[W]hether the prior convictions met the qualifying statutory requirements is a threshold legal determination to be made by the trial judge, not a question for the jury." *Id.* at 92.

3.    WPIC 130.10

The standard instruction for the definition of "written instrument" in the context of forgery is contained in 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 130.10 (4th ed. 2016) (WPIC). WPIC 130.10 does not contain a further definition of "instrument" that includes a legal efficacy requirement.

The "Note on Use" for the instruction states, "If there is an issue for the jury regarding whether the basis for the alleged forgery is an 'instrument,' an instruction may have to be crafted based on the common law definition of the term. See the Comment below." WPIC 130.10, note on use. The comment to WPIC 130.10 explains the common law legal efficacy requirement but then states, "Because issues of legal efficacy will *generally be for the court to determine, rather than the jury*, the committee has not included the common law definition in the instruction." WPIC 130.10, comment (emphasis added).

4.    Division One Unpublished Decision in *Hill*

In *State v. Hill*, No. 70742-6-I, slip op. at 10-16 (Wash. Ct. App. Oct. 27, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/707426.pdf, Division One of this court expressly addressed the issue presented here in a forgery case. The court held that the defendant was entitled to have the jury instructed on the legal efficacy issue and that the jury rather that the trial court must decide whether a written instrument has legal efficacy. *Id.* at 1, 12-16.

The court acknowledged that legal efficacy is not an explicit or implied element of forgery. *Id.* at 13-14. But the court stated,

12

> [T]he element at issue is that Hill possessed or put off as true a written instrument. To be an instrument, a writing must be found to have legal efficacy. Thus, while legal efficacy is not a separate element of the offense of forgery, it is a definitional aspect of "instrument," which must be proved to the jury beyond a reasonable doubt.

*Id.* at 14.

The court concluded that *Miller* was inapplicable to the legal efficacy determination. *Id.* at 14-15. The court stated,

> The legal efficacy of an alleged written instrument is distinguishable from the validity of a domestic violence no-contact order. *Prior authority establishes* that the question of whether the "money order" was legally efficacious was for the trier of fact to determine because it was part and parcel of the trier of fact's inquiry into whether an instrument was proved to exist. This conclusion necessarily follows from *State v. Smith*, 72 Wn. App. 237, 864 P.2d 406 (1993).

*Id.* (emphasis added).

However, the court did not identify the prior authority that establishes that legal efficacy must be decided by the trier of fact. We have located no such authority. In *Smith*, the court simply held that a written instrument must have legal efficacy to support a forgery conviction and reversed a jury verdict because the instrument at issue had no legal efficacy. 72 Wn. App. at 243. The court in *Smith* did not address whether the legal efficacy question was one for the trial court or for the jury.[3]

5. Analysis

Whether a written instrument has legal efficacy involves the interpretation of that instrument. "The interpretation to be given written instruments, whether the procedure be civil or criminal is a matter of law for the court, and not a question of fact for the jury." *State v.*

---

[3] The court in *Hill* also cited to *Scoby*, 117 Wn.2d at 63, and *State v. Aitken*, 79 Wn. App. 890, 892-95, 905 P.2d 1235 (1995). But neither case addressed whether the legal efficacy question was one for the trial court or for the jury.

*Comer*, 176 Wash. 257, 266, 28 P.2d 1027 (1934); *see also In re Estate of Larson*, 71 Wn.2d 349, 354, 428 P.2d 558 (1967). "Questions of law are for the court, not the jury, to resolve." *Miller*, 156 Wn.2d at 31. And legal efficacy of an instrument involves issues that are "uniquely within the province of the court." *Id.*

This is particularly true for a document like a bank account application. The jury would have no basis for determining whether a bank account application has legal efficacy. Such a determination requires a legal analysis that could be performed only by the trial court.

Treating legal efficacy as a legal issue is consistent with the case law. Almost all of the reported legal efficacy cases address sufficiency of the evidence challenges. *State v. Haislip*, 77 Wn.2d 838, 842, 467 P.2d 284 (1970); *State v. Taes*, 5 Wn.2d 51, 53-54, 104 P.2d 751 (1940); *Bradshaw*, 3 Wn. App. 2d at 189-90; *Smith*, 72 Wn. App. at 239; *State v. Aitken*, 79 Wn. App. 890, 893-94, 905 P.2d 1235 (1995); *State v. Stiltner*, 4 Wn. App. 33, 36-38, 479 P.2d 103 (1971). In all these cases, the appellate court essentially determined as a matter of law whether an instrument had legal efficacy. If so, the evidence was found sufficient. *See Haislip*, 77 Wn.2d at 842; *Bradshaw*, 3 Wn. App. 2d at 194; *Aitken*, 79 Wn. App. at 894. If not, the evidence was found insufficient. *See Taes*, 5 Wn.2d at 53-54*; Smith*, 72 Wn. App. at 243; *Stiltner*, 4 Wn. App. at 38.

We recognize that *Miller* can be distinguished. Whether a no-contact order is valid is different than whether a written instrument has legal efficacy. Division One in *Hill* noted that a court order is the result of a proceeding with due process protections, and that is not the case for written instruments. Slip op. at 16. However, the Supreme Court in *Miller* did not base its analysis on the nature of the order itself, but on the fact that the validity of such an order is a

question of law "uniquely within the province of the court." 156 Wn.2d at 31. We reach the same conclusion regarding the legal efficacy of an instrument.

We conclude that the legal efficacy of Smith's bank account applications was a question of law for the trial court. Accordingly, we hold that the trial court did not err in declining to give Smith's legal efficacy jury instruction.

## CONCLUSION

We affirm Smith's convictions, but we remand for the trial court to strike the criminal filing fee from the judgment and sentence.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the unpublished portion of this opinion, we hold that (1) the trial court's exclusion of James's attorney's testimony did not violate Smith's right to present a defense; (2) defense counsel's performance was not deficient for failing to request limiting instructions regarding James's prior statements and bad acts; and (3) as the State concedes, the criminal filing fee imposed as a legal financial obligation (LFO) must be stricken from the judgment and sentence.

## ADDITIONAL FACTS

James and Broussard also were charged in relation to these transactions, and their cases were joined with Smith's case for trial. Before trial, James entered a guilty plea. James's Statement of Plea of Guilty included a section for him to state in his own words what made him guilty. That section stated that (1) James had knowingly used the social security numbers of other people to obtain loans for vehicles he did not intend to buy, including the $14,840 loan from Inspirus Credit Union; (2) Smith had opened the Wells Fargo accounts for A.J. Motors

15

knowingly using the Indiana child's social security number; (3) Smith knew that James deposited the $14,840 check from Inspirus in the A.J. Motors account; (4) all three brothers made withdrawals from the business accounts; and (5) James, Smith, and Broussard all were working together and each knew what the other two were doing. James initialed next to the beginning of this section and signed at the end of the guilty plea statement.

*James's Trial Testimony*

At trial, the prosecutor asked James about his guilty plea statement.

Q. [Y]ou entered a guilty plea, right?

A. Of course.

Q. And in that guilty plea you said, during the period between April 12th –

A. No, no, no, no, you're wrong. I didn't say none of that. Like I already told you before, my lawyer said that, and since I was on my way to hurry up and get out of Pierce County, all I did was just initial that, but those words were not from my mouth. No, I did not say any of that at all regardless of what that says. So you can call [my attorney]. . . . That's the one that made those statements, not me.

6 RP at 896-97. James continued "I initialed everywhere where it said initial so I can hurry up and leave because I wanted to start my [sentence]." 6 RP at 899. He testified that the facts recounted in his guilty plea were not true facts.

The following exchange occurred between the prosecutor and James:

Q. Yes or no, Mr. James. Mr. Smith knew that M.M. was a real person when he opened the Wells Fargo account for A.J. Motors?

A. Nobody knew anything besides me, simple as that.

Q. Except you initialed . . . . That was included in your statement, right?

A. No, not my statement, no, not my statement, because I didn't even make no statement.

Q. You also deposited the $14,840 check into Mr. Smith's A.J. Motors account, correct?

16

A. That's not correct.

Q. And you knew that Mr. Smith did this, correct?

A. Not correct. I don't even know where you even got that from. Like I said, these are not from me.
. . . .

Q. You also knew that Mr. Broussard created a purchase agreement between himself and Fast Lane Autos using a social security number that wasn't his own, correct?

A. Not correct, for the last time.
. . . .

Q. . . . Mr. Broussard took that purchase agreement to TAPCO and obtained a check in the amount of $13,400, correct?

A. I don't know what happened.

Q. You and Mr. Smith and Mr. Broussard made multiple withdrawals from both the U.S. Bank account and from the Wells Fargo accounts, correct?

A. Not correct.

Q. You each knew what the other two was doing, correct?

A. Not correct.

Q. And the three of you were all working together to get the money, weren't you?

A. Not correct.

Q. Except that's all contained within the plea statement that you signed, correct?

A. No, not correct.

Q. That's not your signature at the bottom of paragraph 11?

A. Like I said, these statements are not correct, for the last time. They're not from my mouth.

Q. But you adopted –

A. No, I didn't adopt anything. They're not from my mouth.

Q. You told the Court you adopted them as your own, correct?

A. They're not mine. Like I said, all I did was initial and sign just so I can hurry up and leave.

6 RP at 905-07.

*Evidentiary Rulings on James's Prior Bad Acts and Statements*

After James's testimony, the trial court analyzed whether documentary evidence of James's financial transactions would be admissible against Smith and Broussard. The court concluded that

> [A]s I apply Evidence Rule 404(b) and Evidence Rule 403, I believe and find that the circumstantial evidence of an overall criminal scheme and the defendants' knowledge of it and their motive and intent to participate is highly probative and its probative value, in the Court's view, clearly outweighs the minimal risks that are cautioned against in Evidence Rule 403.

7 RP at 951. The trial court admitted the documentary evidence.

The trial court stated that the documentary evidence "might appropriately be the subject of a limiting instruction" if the defendants proposed such an instruction, "perhaps identifying the documents that the jury may only consider for a limiting purpose . . . that pertain to certain transactions, documents pertaining to a particular credit union or a bank perhaps to clue the jury in as to the limited purpose of those documents." 7 RP at 951-52.

Defense counsel did not request a limiting instruction regarding the documentary evidence of James's financial transactions, and no instruction regarding that evidence was given. Defense counsel also did not request a limiting instruction on the prosecutor's use of the statements in James's plea agreement to impeach him, and no instruction regarding those statements was given.

Also following James's testimony, Broussard's attorney served James's former attorney with a subpoena to testify regarding the circumstances surrounding the drafting of James's statements in the guilty plea. Smith joined in the request to have James's former attorney testify. The Department of Assigned Counsel moved to quash the subpoena.

Smith and Broussard argued that in attempting to impeach James using prior inconsistent statements from his plea, the prosecutor had read James's prior statements into the record. They wanted to call James's former attorney to testify that the language in James's plea statement came not from James himself, but from an email from the prosecutor. The trial court quashed the warrant.

*Imposition of Criminal Filing Fee*

At sentencing, the trial court imposed legal financial obligations (LFOs), including a $200 criminal filing fee. The trial court did not consider at the sentencing hearing whether Smith was indigent. But the court found Smith indigent for purposes of appeal.

A. EXCLUSION OF JAMES'S ATTORNEY'S TESTIMONY

Smith argues that the trial court's exclusion of the testimony of James's attorney regarding the circumstances under which the statements in James's plea agreement were drafted violated his constitutional right to present a defense. We disagree.

1. Legal Principles

A criminal defendant has a constitutional right to present a defense. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). This right to present a defense derives from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Wade*, 186 Wn. App. 749, 763, 346 P.3d 838 (2015). There also is a

fundamental due process right to present a defense under the Fourteenth Amendment. *State v. Lizarraga*, 191 Wn. App. 530, 551-52, 364 P.3d 810 (2015).

However, a defendant has no constitutional right to present evidence that is inadmissible under standard evidence rules. *Wade*, 186 Wn. App. at 764. Pertinent here, "[d]efendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence." *Jones*, 168 Wn.2d at 720. Therefore, a defendant's evidence must at least have minimal relevance to implicate the right to present a defense. *Id.*

In evaluating whether the exclusion of evidence violates the defendant's constitutional right to present a defense, "the State's interest in excluding evidence must be balanced against the defendant's need for the information sought to be admitted." *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019).

We review a trial court's evidentiary rulings for abuse of discretion. *Id.* at 797. We review de novo whether an evidentiary ruling violated the defendant's right to present a defense. *Id.* at 797-98.

2. Admissibility of Testimony Explaining Prior Inconsistent Statements

Witnesses may be impeached with a prior out-of-court statement of a material fact that is inconsistent with their trial testimony. ER 613. This evidence is not probative of the substantive facts but is impeachment evidence affecting the witness's credibility. *State v. Clinkenbeard*, 130 Wn. App. 552, 569, 123 P.3d 872 (2005). If a witness has been impeached by a prior statement, evidence generally is admissible to explain that statement. *See* ER 801(d)(1); *see also* 5A KARL B. TEGLAND, WASHINGTON PRACTICE EVIDENCE LAW AND PRACTICE § 613.18 (6th ed. 2016).

However, if a witness denies making a prior inconsistent statement and no extrinsic evidence of that statement is introduced, a trial court may disallow testimony explaining the prior

statement. *State v. Thacker*, 94 Wn.2d 276, 280, 616 P.2d 655 (1980). "The rationale is that no impeachment evidence has been introduced into evidence which calls for an explanation." *Id.* The trial court has discretion whether to admit explanatory testimony. *Id.* at 280-81.

The court in *Thacker* rejected the notion that a defendant is *never* entitled to introduce evidence that would explain prior statements not introduced into evidence. *Id.* at 281. In that case, on cross-examination of the defendant the prosecutor read extensive excerpts from the defendant's prior interview in question and answer form. *Id.* at 277-78, 281. The court held that it was error to refuse the defendant's request to put on rebuttal testimony where the total effect of the prosecutor's cross-examination of the defendant "was to give the jury the impression that the statements were properly in evidence." *Id.* at 282.

3. Analysis

Here, the State called James as a witness and asked him to admit several statements contained in his guilty plea statement. However, the prosecutor did not read directly from the plea statement and the statement was not offered into evidence. Instead, she asked questions based on the statements made in the plea statement in an attempt to have James admit those statements. Further, James repeatedly denied authoring the statements and repeatedly stated they were not true. He explained several times that his lawyer had written the statements and that he signed off on them because he was in a hurry to leave Pierce County and start serving his sentence.

As a result, the general rule in *Thacker* applies here. Because James denied authorship of the prior inconsistent statements in the plea agreement and no extrinsic evidence was introduced, the trial court had discretion to exclude testimony explaining the prior statement. *Thacker*, 94 Wn.2d at 280. Conversely, the holding in *Thacker* – that the trial court abused its discretion by

21

excluding explanatory evidence under the specific facts of that case – is inapplicable here.

Unlike in *Thacker*, the prosecutor here did not read from the plea statement or give any

indication that the contents of the statement were evidence in the case. Further, James did

provide an explanation for the prior inconsistent statements – he stated that because he was eager

to leave Pierce County and start his sentence, he signed off on what his lawyer had written even

though it was not true.

Accordingly, we hold that the trial court did not abuse its discretion in excluding the

testimony of James's attorney.

B.      INEFFECTIVE ASSISTANCE OF COUNSEL

Smith contends that his trial counsel was ineffective because he failed to request limiting

instructions regarding James's prior inconsistent statements and evidence of James's crimes. We

disagree.

1.      Standard of Review

The Sixth Amendment to the United States Constitution and article I, section 22 of the

Washington Constitution guarantee criminal defendants the right to effective assistance of

counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). We review de novo

ineffective assistance of counsel claims. *Id.*

To prevail on an ineffective assistance claim, the defendant must show both that (1)

defense counsel's representation was deficient and (2) the deficient representation prejudiced

him or her. *Id*. at 457-58. Representation is deficient if, after considering all the circumstances,

it falls below an objective standard of reasonableness. *Id*. at 458. Prejudice exists if there is a

reasonable probability that, except for counsel's error, the result of the proceeding would have

been different. *Id*. It is not enough that ineffective assistance conceivably impacted the case's outcome; the defendant must affirmatively show prejudice. *Id*.

We begin our analysis with a strong presumption that defense counsel's performance was reasonable. *Id.* Defense counsel's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *Id.* To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.' " *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

Where counsel's failure to request a particular jury instruction is the basis for a claim of ineffective assistance, the defendant must show he or she "was entitled to the instruction, counsel's performance was deficient in failing to request it, and the failure to request the instruction caused prejudice." *State v. Classen*, 4 Wn. App. 2d 520, 540, 422 P.3d 489 (2018).

2.    Failure to Request Limiting Instruction on James's Prior Inconsistent Statements

As discussed above, a witness may be impeached with a prior out-of-court statement of a material fact that is inconsistent with his or her testimony in court, even if such a statement would otherwise be inadmissible as hearsay. ER 613; *Clinkenbeard*, 130 Wn. App. at 569. If the witness denies the inconsistent statement, then extrinsic evidence of the statement is admissible for purposes of impeachment. ER 613(b). Where prior inconsistent statements are admitted as impeachment evidence, an instruction cautioning the jury to limit its consideration of the statements to their intended purpose is proper. *State v. Johnson*, 40 Wn. App. 371, 377, 699 P.2d 221 (1985).

But here, Smith cannot show he was entitled to a limiting instruction on James's prior inconsistent statements because the statements were never admitted into evidence. When the

State attempted to impeach James with the statements in his guilty plea statement, he denied that the statements were his and the plea statement itself was never entered into evidence. Therefore, we hold that Smith's ineffective assistance of counsel claim fails because the trial court would not have given a limiting instruction even if defense counsel had requested one.

3.    Failure to Request Limiting Instruction on Evidence of James's Crimes

ER 404(b) prohibits a court from admitting "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." But such evidence may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). If evidence of prior crimes, wrongs, or acts is admitted for a proper purpose, the defendant is entitled to request and receive a limiting instruction. *State v. Gresham*, 173 Wn.2d 405, 423, 269 P.3d 207 (2012).

However, courts generally presume that defense counsel's choice not to request a limiting instruction was a tactical decision to avoid drawing further attention to the evidence. *State v. Dow*, 162 Wn. App. 324, 335, 253 P.3d 476 (2011). Therefore, the burden is on the defendant to rebut this presumption. *State v. Yarbrough*, 151 Wn. App. 66, 90-91, 210 P.3d 1029 (2009).

Here, Smith's counsel may have decided to forgo a limiting instruction to avoid reemphasizing James's prior bad acts. Because defense counsel's failure to request a limiting instruction may have been a legitimate trial tactic, Smith does not show that his trial counsel's performance fell below an objective standard of reasonableness. We hold that Smith's ineffective assistance of counsel claim on this basis fails.

C.      IMPOSITION OF CRIMINAL FILING FEE

Smith argues, and the State concedes, that we should strike the criminal filing fee imposed as an LFO from his judgment and sentence. We agree.

In 2018, the legislature amended RCW 36.18.020(2)(h), which now prohibits imposition of the criminal filing fee on a defendant who is indigent as defined in RCW 10.101.010(3)(a)-(c). This amendment applies prospectively to cases pending on direct appeal. *State v. Ramirez*, 191 Wn.2d 732, 749-50, 426 P.3d 714 (2018).

The trial court found that Smith was indigent for purposes of appeal. The record is unclear if the trial court found Smith indigent based on the definitions in RCW 10.101.010(3)(a)-(c), but the State does not oppose striking the criminal filing fee. Therefore, we order the trial court to strike the criminal filing fee.

CONCLUSION

We affirm Smith's convictions, but we remand for the trial court to strike the criminal filing fee from the judgment and sentence.

MAXA, P.J.

We concur:

GLASGOW, J.

CRUSER, J.