IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>              Respondent,<br><br>      v.<br><br>RICKY ANTHONY JACKSON,<br><br>              Appellant. | No. 85650-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Ricky Anthony Jackson appeals from his convictions after a jury trial for unlawful possession of a firearm in the first degree and attempting to elude a pursuing police vehicle. He asserts that there was insufficient evidence to sustain these convictions and the trial court erred in imposing the victim penalty assessment (VPA). We affirm his convictions, but reverse in part and remand to strike the VPA.

FACTS

In the early morning hours of August 5, 2018, Porsha Lester and a friend were in the Capitol Hill neighborhood of Seattle. Lester came into contact with Ricky Jackson near the intersection of 10th Avenue and East Pike Street while she and a friend were in line at a food cart. Jackson and Lester had dated for two months, but had ended their relationship not long before the August 2018 incident. The record offers divergent accounts about precisely who initiated the communication on that night, but the parties agree that Lester asked Jackson to return of some of her

personal items that were still in his possession. Lester further alleged that Jackson escalated the situation by making several verbal threats. Lester then called 911 and reported that Jackson had threatened her with a pistol by lifting up his shirt to show the firearm tucked into his waistband. In the call, Lester described Jackson as wearing a red shirt and a red baseball hat. She also told the operator that Jackson had been following her during the call but that he stopped once he realized she was on the phone with 911. Still on the phone, Lester said that Jackson got into a gray Dodge Charger and left the area. She also supplied the license plate number for the Charger and stated that Jackson was alone in the vehicle.

Seattle Police Department (SPD) Sergeant Michael Tietjen and Officers Matthew Blackburn and Nicholas Evans were in the area and, when they spotted the Charger, Tietjen attempted to initiate a traffic stop by activating the lights and siren on his patrol vehicle. The Charger did not comply and SPD engaged in pursuit. The pursuit ended when the Charger crashed at the intersection of Madison Street and 6th Avenue near the William Kenzo Nakamura United States Courthouse. Security cameras in the area captured much of what happened next; some in black and white and other recordings in color. Footage introduced at trial showed the collision and a figure exiting the Charger who then threw what appeared to be a firearm on the ground before running west along Madison Street. One recording showed a figure wearing a red hat and red shirt, consistent with Lester's description to the 911 operator, while another black and white recording showed that a similar figure removed and discarded a hat and shirt.

Grant Morozoff, one of a group of off-duty Canadian law enforcement officers who were visiting on vacation, saw a man hide behind some bushes in the plaza next to the courthouse and pointed him out to pursuing SPD officers. Ultimately, Jackson was discovered in the bushes and arrested. Officers including Tietjen, Blackburn, and Evans searched the area and recovered a short-barreled rifle, a red shirt, and a red baseball hat. Tietjen, Blackburn, and Evans continued to search along the route of pursuit and discovered a pistol. SPD Detective Jennifer Samson later searched the gray Charger pursuant to a search warrant and seized various documents and other evidence that suggested the vehicle belonged to Jackson.[1]

The State charged Jackson with unlawful possession of a firearm in the first degree (UPF1), attempting to elude a pursuing police vehicle, and felony harassment, the latter of which was designated as crime of domestic violence based on Lester and Jackson's prior relationship and carried a special allegation that it was committed with a firearm. At trial, the State introduced the testimony of Lester and several SPD officers involved in the pursuit and apprehension of Jackson. The jury convicted Jackson of UPF1 and attempt to elude, but acquitted him on the felony harassment charge.

Jackson timely appealed.

ANALYSIS

I.     Sufficiency of the Evidence

Jackson's primary contention on appeal is that his convictions were not supported by sufficient evidence. First, he alleges that the State "failed to prove

---

[1] By the time of trial, Samson had been promoted to Detective Sergeant.

Jackson knowingly possessed a firearm." Second, in a pro se statement of additional grounds for review (SAG), Jackson argues that his conviction for attempt to elude was similarly not supported by sufficient evidence.

Due process requires the State to prove every element of a charged crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. "Sufficiency of the evidence is a question of constitutional law that we review de novo." *State v. Melland*, 9 Wn. App. 2d 786, 801, 452 P.3d 562 (2019).

"To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State, and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Stewart*, 12 Wn. App. 2d 236, 239, 457 P.3d 1213 (2020). Challenges to the sufficiency of the evidence concede the truth of the State's evidence and require that we draw reasonable inferences in the State's favor. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265-66, 401 P.3d 19 (2017). "Credibility determinations are made by the trier of fact and are not subject to review." *State v. Smith*, 13 Wn. App. 2d 420, 426, 464 P.3d 554 (2020).

A.      Unlawful Possession of a Firearm in the First Degree

RCW 9.41.040(1)(a) defines the crime of UPF1 as follows:

A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, accesses, has in the person's custody, control, or possession, or receives any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense.

Notably, with regard to the specifics of Jackson's sufficiency challenge, the statute does not contain a knowledge element. Possession can be actual or constructive. *State v. Reichert*, 158 Wn. App 374, 390, 242 P.3d 44 (2010). Constructive possession may "'be established by showing the defendant had dominion or control over the firearm.'" *State v. Manion*, 173 Wn. App. 610, 634, 295 P.3d 270 (2013) (internal quotation marks omitted) (quoting *State v. Lee*, 158 Wn. App. 513, 517, 243 P.3d 929 (2010)). We consider the totality of the circumstances when assessing whether there is substantial evidence of dominion or control to support a conviction. *State v. Lakotiy*, 151 Wn. App. 699, 714, 214 P.3d 181 (2009).

Jackson stipulated to a prior disqualifying conviction so the jury only needed to find the first element, possession. The State presented only one UPF1 charge, despite its allegation that Jackson actually possessed two different firearms during the incident at issue. The jury instructions reflected this posture and expressly stated,

> The State alleges that the defendant committed the act of Unlawful Possession of a Firearm in the First Degree two different ways. To convict the defendant on any count of Unlawful Possession of a Firearm in the First Degree, one particular act of Unlawful Possession of a Firearm in the First Degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Unlawful Possession of a Firearm in the First Degree.

Thus, either instance of possession could be sufficient to support the conviction and both must be considered.

### 1. Short-Barreled Rifle

There was ample evidence presented to the jury to support its conclusion that Jackson possessed the short-barreled rifle that night. The cameras on the

courthouse grounds captured someone discarding a firearm after exiting from the driver's seat of the crashed Charger. Blackburn, Evans and SPD Officer Kristofer Safranek[2] all testified to recovering a firearm that was leaning against the courthouse. The location of its recovery was consistent with where the firearm appeared to have been discarded on the video and the jury could reasonably infer it was the same weapon. The jury was also provided with evidence from which it could conclude that Jackson was the driver and sole passenger of the Charger, such as Lester's description of the car during the 911 call as belonging to Jackson, her testimony at trial, and the evidence of ownership seized during the execution of the search warrant. Viewed as a whole, a finder of fact could infer that it was Jackson who discarded the rifle on the video footage. Contrary to Jackson's framing of this sufficiency challenge, the plain language of the statute makes clear that there is no knowledge element for this crime. While Jackson may have rid himself of the weapon by the time he was apprehended by SPD, there was sufficient evidence presented at trial to establish that it was nonetheless in his possession on the night in question.

2.      Pistol

Shortly after Jackson was arrested, responding SPD officers retraced the route of the pursuit to determine whether anything had been thrown from the vehicle when pursuing officers lost sight of it. The officers recovered a Springfield XD .40

---

[2] By the time of trial, Safranek had left the SPD and held the rank of detective with the Kennewick Police Department.

caliber pistol from the sidewalk on Summit Avenue, in the area where SPD had lost sight of the vehicle during the pursuit.

Safranek testified that he believed it was unlikely it has been there for long because someone would either have taken it or would have called in to report finding it. A holster suitable for the pistol was also recovered near the courthouse by SPD Officer T.J. San Miguel and a search dog. Safranek handled the pistol after its recovery and testified that it had "slide damage" which he said would be consistent with the weapon being thrown from a vehicle and sliding along the pavement. When Samson searched the Charger, a loaded .40 caliber magazine was recovered from the center console, and Safranek testified that the magazine would fit the pistol recovered on Summit Avenue. From this evidence, the jury could conclude that Jackson had discarded the pistol while evading SPD in the Charger and later discarded holster for the pistol while eluding them on foot. Again, while there is no evidence that Jackson was in possession of the pistol at the time of his arrest, testimony of the officers supports a conclusion that it was in his possession on the date alleged by the State and, under the plain language of the statute, the State was not required to prove knowledge.

The State presented sufficient evidence to support a conclusion by the jury that Jackson was in possession of the rifle and the pistol on August 5, 2018, either of which could independently satisfy the government's burden of proof beyond a reasonable doubt as to the UPF1 charge.[3]

---

[3] The jury was properly provided a unanimity instruction in light of the evidentiary options offered by the State as to the single count of UPF1, thus, the jury was required to unanimously agree upon one instance of possession in order to convict Jackson of that charge.

B.      Attempting to Elude Pursuing Police Vehicle

In his SAG, Jackson further asserts that his conviction for attempt to elude was not supported by sufficient evidence.  He specifically avers that the State did not prove beyond a reasonable doubt that he was the driver of the vehicle the police pursued and focuses on the lack of video evidence showing him behind the wheel.

RCW 46.61.024(1) establishes the essential elements for attempt to elude as follows:

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring [their] vehicle to a stop and who drives [their] vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

"In criminal trials, the State generally has the burden of establishing, beyond a reasonable doubt, the identity of the accused as the person who committed the offense." *State v. Anderson*, 31 Wn. App. 2d 668, 683, 552 P.3d 803, *review denied*, 3 Wn.3d 1034 (2024).

Contrary to Jackson's contention in his SAG, there was ample evidence adduced at trial that could support the jury's conclusion that he was the driver of the Charger pursued by SPD.  Lester identified him and the vehicle to the 911 operator, providing the make, model, and license plate number, and confirmed this at trial when a recording of the 911 call was played for the jury.  She also told the operator Jackson was wearing a red shirt and hat, which was consistent with security footage of the incident introduced at trial, and items matching her description were recovered from the courthouse sidewalk near the site where the vehicle pursuit ended.  Other

security cameras captured an individual discarding items in that location. Evidence recovered from the Charger after the crash further linked it to Jackson; there were several documents bearing Jackson's name, including the title that listed him as the registered owner, a souvenir license plate that read "Ricky," and a loaded magazine that could have fit the pistol recovered along the route of the vehicle pursuit. Only one person was recorded by the security cameras at the courthouse following the crash and responding officers testified they did not encounter anyone else on the courthouse grounds that night. The footage was played for the jurors, who would have also had the opportunity to observe Jackson in the courtroom during the trial to determine if he was the person captured by the security cameras. Further, Morozoff observed a man hiding the bushes near the courthouse and pointed him out to officers on the scene. SPD Officer Paul Simbeck testified that the man was lying in the landscaping of the courthouse grounds a few feet below the level of the sidewalk, near the corner of Madison Street and Fifth Avenue, and officers ordered the man, later identified as Jackson, out of the bushes and placed him in handcuffs.

While Jackson is correct that the State did not introduce video evidence that definitively established that he was the one operating the Charger during the police pursuit, the test for a sufficiency challenge does not mandate particular types of evidence in order for a reviewing court to conclude that a conviction is properly supported. Again, our review for sufficiency of the evidence assumes the truth of the State's evidence and expressly requires us to draw all reasonable inferences in the State's favor. *See Cardenas-Flores*, 189 Wn.2d at 265-66. Given this deferential posture, testimony from Lester, the numerous responding officers, and

civilian witnesses like Morozoff, as well as the physical evidence linking Jackson and the pistol to the gray Charger, taken together, was sufficient to support the jury's determination that the State had proved beyond a reasonable doubt that Jackson operated the vehicle and failed to stop when ordered to do so by SPD.

II.      Legal Financial Obligations

Jackson avers, and the State concedes, that the VPA imposed at sentencing should be stricken due to changes in the underlying law and the court's finding regarding Jackson's indigency.  We agree with the parties' characterization of the applicability of the statutory amendments to Jackson's case, accept the State's concession, and, thus, remand for the trial court to strike the VPA from Jackson's judgment and sentence.

We affirm in part, reverse in part, and remand to strike the VPA.

WE CONCUR:

Díaz, J.                                    Mann, J.